# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PRESTON CARR** ) | |
| **NORTHCRAFT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-20-1004-SM** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **ACTING COMMISSIONER** ) | |
| **OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Preston Carr Northcraft (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 20, 21.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge's (ALJ) decision lacks substantial supporting evidence, the ALJ neglected to properly evaluate opinion evidence, and the ALJ erred in her consideration of Plaintiff's consistency. Doc. 23, at 4-15. After a careful review

of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

# I.   Administrative determination.

## A.   Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

## B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[1]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C.   Relevant findings.

### 1.   Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 519-31; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)   had not engaged in substantial gainful activity since August 15, 2013, the alleged onset date;

(2)   had the following severe medically determinable impairments: bipolar disorder, generalized anxiety disorder, degenerative joint disease, and obesity;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the residual functional capacity[2] (RFC) to perform medium work, with the following nonexertional limitations: he could perform one-to-three-step tasks that are simple, routine, and repetitive; with no fast-paced production requirements and no assembly line work; he can perform simple work-related decision making, with few if any changes in the work setting; he should have no public contact and only occasional contact with co-workers and supervisors;

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

(5)     could not perform any past relevant work;

(6)     could perform jobs that exist in significant numbers in the national economy, such as kitchen helper, salvage laborer, and night cleaner; and so,

(7)     had not been under a disability from August 15, 2013, through October 10, 2019.

*See* AR 521-31. The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council declined "to assume jurisdiction," *see* AR 509-14, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011); *see* AR 510.

## II.     Judicial review of the Commissioner's final decision.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")

(internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

## III.    Analysis of the ALJ's decision.

Plaintiff argues this Court must reverse and remand because (1) substantial evidence does not support the ALJ's RFC assessment, (2) the ALJ failed to evaluate and weigh medical source opinions, and (3) the ALJ erred in her consistency evaluation. Doc. 23, at 4-15.

### A.    Substantial evidence supports the ALJ's RFC assessment.

The ALJ explained her RFC assessment for medium exertion as follows:

> I have limited the claimant to medium exertion to account for the functional deficits related to a combination of impairments, including obesity. . . . A slight finger tremor is mentioned in limited medical evidence; however, physical examinations have generally been intact, with normal range of motion, normal neurological findings, and no tenderness or deformity. Some issue with his foot is described in the record as well; yet, again left foot X-ray was negative and physical examinations have showed normal range of motion, normal neurological findings, full (5/5) strength, normal sensation, and no neurological deficits. It is also worth noting that the psychological portion of all physical examinations within his treating provider's notes have been within normal limits.

AR 527 (internal record citations omitted).

Plaintiff first focuses on his physical impairments, suggesting the ALJ erred in not securing a medical opinion about them. Doc. 23, at 4. He then argues the ALJ did not sufficiently account for his degenerative joint disease (DJD) in the RFC assessment, because she found DJD to be a severe impairment at step two, but did not mention it elsewhere in her decision. *Id.* at 5. Also, he argues, the ALJ overlooked his diagnosed history of hand tremor and deep venous thrombosis (DVT) in the left lower extremity. *Id.* at 5-6. He maintains that by not properly addressing these at step two, the ALJ's step-four and -five decisions were "fatal[ly]" infected. *Id.* at 6. Finally, he argues that the ALJ "did not properly analyze" the effects of his obesity. *Id.* at 7-8.

The Commissioner responds that Plaintiff "made no suggestion he had any physical limitations when he applied for benefits" and testified to none. Doc. 27, at 10. The Court agrees this case does not present an instance in which the ALJ needed to obtain more evidence about Plaintiff's physical limitations. *See id.* at 11. Plaintiff was represented by counsel and presented no objective medical evidence to the ALJ as to the medical limitations his physical restrictions imposed.

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)); *see*

*also Corber v. Massanari*, 20 F. App'x 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all of the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.").

As for Plaintiff's arguments about specific impairments (DJD and obesity), the ALJ considered the entire record, AR 524, and imposed medium-work limitations to account for Plaintiff's impairments. *Id.* at 524, 527. The ALJ addressed Plaintiff's hand tremors, *id.* at 527, and the Court agrees with the Commissioner that his DVT treatment preceded the relevant period and caused no symptoms during the relevant period, Doc. 27, at 13.

### B.    The ALJ did not err in her assessment of the medical source opinions.

Plaintiff challenges the ALJ's assessment of little weight to the recommendations of his treating psychiatrist, Dr. Fiona Li. Doc. 23, at 10-13. Under the applicable treating physician rule, "the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[3] So the ALJ must first determine whether the treating physician's

---

[3]    The "treating physician rule" applies to claims filed before March 27, 2017. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

opinion is to be given "controlling weight." *Krauser*, 638 F.3d at 1330. The opinion is entitled to "controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." *Id.* (citation omitted). If the ALJ finds that the opinion is not entitled to "controlling weight," she must then "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons . . . for the weight assigned." *Id.* If the ALJ ultimately rejects the treating physician's opinion, she must provide specific and legitimate reasons for doing so. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Here, the ALJ observed that Dr. Li's opinion, which noted Plaintiff's "impulsive traits, [inability] to consistently hold a job, poor judgment, and poor social interaction," was inconsistent with Dr. Li's treatment notes. AR 528-29. Those notes showed generally intact mental status examinations. *Id*. at 529. The ALJ also cited the "generally grossly intact psychological portions of [Plaintiff's] physical examinations by other providers," again cutting against Dr. Li's several restrictions. *Id.* And the ALJ looked to Plaintiff's ability to engage in public speaking about his mental health, work with his father, and maintain two friendships from high school. *Id.* The ALJ also discounted Dr.

Li's opinions, noting they "appear[ed] to be based largely on [Plaintiff's] subjective reports." *Id.*

The Court finds the ALJ acknowledged Plaintiff's mental health limitations, and then examined whether those impairments are disabling. *Id.* at 524-27. She also considered generally intact mental status examinations, and that his most recent exam showed he was fully oriented, with normal memory and judgment. *Id.* at 527. In so doing, she looked at Dr. Li's treatment notes and other objective medical evidence. *Id.* at 522, 528-29. The ALJ included various nonexertional restrictions in the RFC assessment (including more restrictive conditions than those recommended by the state agency physicians). *Id.* at 524, 528. The Court finds the ALJ did not err in rejecting Dr. Li's opinion regarding Plaintiff's mental limitations. *See Raymond v. Astrue,* 621 F.3d 1269, 1272 (10th Cir. 2009) (affirming the ALJ's decision to give treating physician's opinion little weight because it was "inconsistent with other medical evidence").

Plaintiff appears to challenge the ALJ's consideration of Dr. Daniel Hammill's testimony and opinion, to which he gave "some" weight. He focuses on the possibility Plaintiff might need to leave work early to take excessive breaks and maintains the ALJ did not account for such evidence. Doc. 23, at 9-

10 (citing AR 550-51).[4] But Dr. Hammill also testified Plaintiff could perform only one, two, and three-step simple repetitive tasks; cannot interact with the general public; could have occasional interaction with co-workers; and could not perform assembly-line or forced-pace tasks. AR 549-50. And those are exactly the restrictions the ALJ included in the RFC assessment. *Id.* at 524.

### C. The ALJ reasonably evaluated Plaintiff's subjective complaints and his credibility/consistency.

Plaintiff argues the "ALJ's consistency/credibility determination is nothing more than an improper conclusion in the guise of findings, and it is not supported by the required substantial evidence." Doc. 23, at 13-14. The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record. AR 525.

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

---

[4]     And Plaintiff argues that Dr. Hammill relied upon Dr. Li's opinion as to Plaintiff's moderate limitations in his ability to understand, remember, and carry out complex instructions and in making judgments on work-related decisions. Doc. 23, at 9. He seems to suggest the ALJ's grant of some weight to Dr. Hammill's opinion while little to Dr. Li's, is incongruous. The Court disagrees—Plaintiff fails to develop this argument in any event. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of her contentions that have been adequately briefed for our review.")

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017);[5] *see, e.g.*, *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8.

The Court defers to an ALJ's symptom evaluation unless the Court finds that the ALJ misread the medical evidence. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ's findings regarding

---

[5]     SSR 16-3p applies to decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). The ALJ need not perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. SSR 16-3p, 2017 WL 5180304, at *10.

Here, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting her reasons for finding that Plaintiff's subjective complaints were not believable to the extent alleged—she gave clear and specific reasons that were specifically linked to the evidence in the record. AR 525, 528-29. The ALJ noted inconsistencies between Plaintiff's subjective statements and: (i) Dr. Waller's consultative mental status examination, *id.* at 526; (ii) Plaintiff's longitudinal record of generally intact mental status examinations, *id.* at 527; (iii) Plaintiff's described daily activities (which include that he has his driver's license, walks the dogs, helps out with dishes and trash disposal, keeps his room tidy, can make a sandwich, and that he has written two books about his bipolar disorder, he has volunteered by speaking to students about his bipolar disorder, and he has had gambling problems), *id.* at 525; and (iv) the "unbiased" third-party examiners' findings and Dr. Hamill's

opinion and testimony, *id.* at 528. The Court finds the ALJ's determination is entitled to deference, and the Court finds no error in the analysis of Plaintiff's subjective statements.

Somewhat curiously, as part of his SSR 16-3p consistency challenge, Plaintiff also briefly argues that the ALJ did not adequately consider the function report and letter his parents submitted. Doc. 23, at 15 (citing SSR 06-3p). The ALJ did "not afford[ ] these significant consideration or weight," agreeing that "credible evidence establishe[d] [Plaintiff] is limited" but not disabled. AR 529. Those reports suggest Plaintiff is easily overwhelmed, has poor impulse control, cannot handle money, sleeps very little, sometimes forgets to take his medicine, has periods of mania and depression, struggles to socialize, and would be unable to work more than two-to-three shifts in a week of no more than four or five hours each. *Id.* at 252-59, 362.

Under the pertinent regulations, an ALJ need not "make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996); *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (emphasizing that *Adams* does not require specific written findings "if 'the written decision reflects that the ALJ considered the testimony'"); SSR 06-03p,

2006 WL 2329939, at *5-6 (Aug. 9, 2006).[6] Here, the ALJ noted and considered Plaintiff's parents' submissions. AR 529. The ALJ did not need to provide specific reasons for discounting them. *Blea*, 466 F.3d at 915.

Substantial evidence supports the ALJ's credibility/consistency evaluation.

**IV.   Conclusion.**

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 1st day of November, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[6]     Because Plaintiff filed her claim before March 27, 2017, the former regulations apply to the consideration of nonmedical opinion evidence. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).